IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **ERIC MATTHEW NEGRIN,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:20-cv-428-TES-CHW |
| | : | |
| Lieutenant **JOHN GARY,** *et al.*, | : | |
| | : | Proceedings Under 42 U.S.C. § 1983 |
| Defendants. | : | Before the U.S. Magistrate Judge |
| | : | |

## REPORT AND RECOMMENDATION

Based on the analysis below, it is **RECOMMENDED** that the Defendants' pending motions for summary judgment (Docs. 36, 37) be **GRANTED**, and that Plaintiff's motion for reconsideration (Doc. 65) be **DENIED.** It is further **ORDERED** that Plaintiff's motion for a stay (Doc. 54) and motion to compel discovery (Doc. 59) are **DENIED**.

## BACKGROUND AND MOTION TO RECONSIDER

Plaintiff Eric Matthew Negrin commenced this Section 1983 action in November 2020 to complain of two related problems that arose during his detention in the Twiggs County Jail. First, Plaintiff complained of an attack by another inmate named Wilson during a time when Plaintiff "was under medical observation" due to a prior suicide attempt, and hence "was not supposed to be housed [with] other inmates." (Doc. 13, p. 1). Second, Plaintiff alleges that the Defendants, three sheriff's officers and a nurse, failed to ensure that Plaintiff received adequate medical care after Wilson's attack. (Doc. 13, p. 2). Plaintiff claims that when he finally was able to arrange for an MRI in February 2021, doctors detected herniated discs at the C6-C7 vertebral site along Plaintiff's spine. (Doc. 13, p. 3).

1

Based on Plaintiff's allegations, on screening under 28 U.S.C. § 1915A, the Court allowed Plaintiff to proceed on a claim of deliberate indifference to medical needs against the Defendants, Sheriff Mitchum and Officers Faulk and Gary, along with Defendant Betty Evans, a nurse, based upon their alleged failure to provide Plaintiff adequate pain medication. (Doc. 15, pp. 6–7). The Court allowed Plaintiff to proceed on this claim despite Plaintiff's acknowledgement that he did, in fact, initially receive "[Neurontin], muscle relaxer, and another pain reliever." (Doc. 13, p. 2).

The Court did not, by contrast, allow Plaintiff to proceed on a claim of deliberate indifference to the risk of harm posed by inmate Wilson. (Doc. 15, pp. 3–5; Doc. 21). As explained in the screening report and recommendation, there is no indication that any of the Defendants had either subjective knowledge of or any objective reason to anticipate Wilson's propensity for violence against Plaintiff. Instead, the factual foundation for Plaintiff's putative failure-to-protect claim was merely that because Plaintiff was on medical observation or medical isolation for his past suicide attempt, Plaintiff should not have been housed with another inmate. Although Plaintiff's housing–assignment allegations might show a "direct violation of … doctors' orders[,] Southern Health Partners policy & procedure[, and] Twiggs Co. Jail Standard Operating Procedure" relating to suicide watch, Plaintiff's allegations did not, and still do not, state a claim for relief based upon a Constitutional wrong. *See, e.g.*, *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) ("because Murphy alleges no facts indicating that any officer was aware of a substantial risk of serious harm to him *from Thomas* … his claim fails"). For that reason, it is **RECOMMENDED** that Plaintiff's motion for reconsideration (Doc. 65) be **DENIED**.

## PLAINTIFF'S MOTIONS TO COMPEL AND TO STAY

**(1)** **Motion to Compel** **(Doc. 59)**

In another motion, Plaintiff asks the Court to compel discovery answers. (Doc. 59). The Court previously directed, upon Plaintiff's request for the issuance of subpoenas, that Defendant Evans should provide Plaintiff's medical treatment notes directly to Plaintiff, *see* (Doc. 34, p. 2, n.1; Doc. 50), and the record indicates that Defendant Evans complied. (Doc. 51-1, p. 2).

In his pending motion to compel, Plaintiff now seeks a variety of additional discovery relief, none of which is warranted. Regarding Defendant Evans, Plaintiff seeks to compel answers to 19 initial interrogatories which Plaintiff groups into three categories. (Docs. 59-3, 59-4) The record shows that category 1 (interrogatories 1-7) and category 3 (interrogatory 19) relate to irrelevant matters — respectively, to Plaintiff's housing assignment and to medical care provided to another inmate. The record further shows that Defendant Evans has already provided answers to Plaintiff's category 2 interrogatories (interrogatories 8-18). Those interrogatories inquired about methods of diagnosis and a plan of treatment for Plaintiff's injuries, but Defendant Evans has responded that: (a) as a nurse, her role was limited to carrying out physician instructions, (b) Evans did not have the authority to diagnose significant injuries or to develop a responsive plan of treatment, and (c) to the extent Plaintiff's interrogatories seek additional information that Evans lacks, Plaintiff may be able to glean that information from his medical records, which Evans previously produced. Because Evans's answers are satisfactory, no compulsive discovery relief is warranted regarding Plaintiff's first round of interrogatories directed to Defendant Evans.

Nor, for a variety of reasons, is compulsive relief warranted regarding any of Plaintiff's remaining discovery requests. This Court's Local Rules provide that "interrogatories may not exceed twenty-five (25) to each party." M.D. GA. LOCAL RULE 33.1. Plaintiff's second set of

3

interrogatories to Defendant Evans exceeds this cap on its own, even without consideration of Plaintiff's nineteen previous interrogatories addressed to Defendant Evans. (Doc. 59-2). Additionally, Plaintiff did not serve his second round of interrogatories until late January 2022, but the relevant discovery period expired in mid-November 2021, ninety days after Evans filed her answer in August 2021. *See* (Doc. 15, p. 10). Because Plaintiff offers no good cause for either his excessive number of interrogatories or his failure diligently to conduct discovery within the period contemplated by the Court's scheduling order, no compulsive relief is warranted.

Regarding Plaintiff's interrogatories posed to the three sheriff's office defendants (Doc. 59-1), compulsive discovery relief is improper because Plaintiff fails to certify that he first attempted, in good faith, to resolve any discovery dispute by conferring with counsel for the defendants as required by both Local Rule 37 and by FED. R. CIV. P. 37(a). Additionally, Plaintiff's interrogatories to the sheriff's office defendants exceed the Court's twenty-five interrogatory cap, and many of the requests relate to matters not relevant to Plaintiff's sole surviving claim of deliberate indifference to serious medical needs.

Finally, no compulsive discovery relief is warranted regarding Plaintiff's second request for production of documents, directed to all defendants. (Doc. 59-5). The record indicates that Plaintiff did not properly serve his requests for production upon the Defendants,[1] although the Defendants nevertheless provided responsive documents. It is similarly unclear whether Plaintiff properly served his second request for production of documents upon the Defendants, but in any

---

[1] Both the Court and the Defendants have made efforts to accommodate Plaintiff in light of his *pro se* status and limited familiarity with the mechanics of discovery. For example, Plaintiff submitted a letter to "jail administration" requesting a copy of "medical grievances & requests." (Doc. 58-1, p. 1). The sheriff's office defendants properly treated this document as a request for production, and they responded by mailing Plaintiff's "entire Twiggs County jail file" to Plaintiff several times, and at multiple locations, to ensure receipt. *See* (Doc. 58, p. 2). Similarly, although Plaintiff did not properly request the production of his medical treatment notes from Defendant Evans, the Court instructed Evans to produce Plaintiff's medical file (Doc. 50, p. 2), and Defendant Evans complied.

4

event, compulsive discovery relief is not wot warranted for many of the reasons already stated, namely: (i) Plaintiff's requests exceed the ten-request limit set by the Court's Local Rules, M.D. GA. LOCAL RULE 34; (ii) Plaintiff failed to submit his requests during the discovery period; (iii) Plaintiff fails to certify that he first attempted, in good faith, to seek production through discussions with counsel for the Defendants; and (iv) Plaintiff offers no justification for why the standard operating procedures he seeks will be relevant to his claim of deliberate indifference to medical needs.[2] Accordingly, for all of the reasons discussed herein, Plaintiff's motion to compel discovery (Doc. 59) is **DENIED**.

**(2)** **Motion to Stay** **(Doc. 54)**

In a different motion, Plaintiff asks for a stay of proceedings. (Doc. 54). *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) (explaining that a district court has "broad discretion to stay proceedings as an incident to its power to control its own docket"). As possible grounds for a stay, Plaintiff cites his transfer and subsequent four-week Covid-19 isolation, along with the burdens associated with the "5 or 6 pending & filed [Section] 1983" actions that Plaintiff claims to be litigating in this Court alone. (Doc. 54, p. 1).

This action has been pending for nearly one-and-a-half years, Plaintiff has had access for months to his medical records, the most probative evidence relating to Plaintiff's straightforward denial-of-medical-care claims, and the record shows that Plaintiff has had a meaningful ability both to submit filings to this Court and to make discovery requests of the Defendants. There is, therefore, no basis to stay proceedings or to further delay the resolution of this action by any similar

---

[2] *See, e.g.*, *Jackson v. McLaughlin*, 2016 WL 6395902 at *4 (M.D. Ga. 2016) ("A violation of [an] administrative SOP is not alone a basis for a constitutional claim under § 1983").

form of relief, such as a reopening of the discovery period. Plaintiff's motion to stay proceedings (Doc. 54) is therefore **DENIED**.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of informing the Court of the basis for its motion, and of citing "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that support summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In resolving motions for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

## ANALYSIS

Plaintiff's deliberate indifference claims are based on the Defendants' alleged failure to provide pain relief and other medical assistance after inmate Wilson's attack. To prevail on these claims, Plaintiff "must prove both an objectively serious medical need and that a Defendant acted with deliberate indifference to that need." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008). "To establish 'deliberate indifference,' Plaintiff must show that a Defendant had '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [mere] negligence.'" *Id.*

The Sheriff's Office Defendants and Defendant Betty Evans have separately moved for summary judgment, both arguing that Plaintiff cannot satisfy the standard for deliberate indifference. (Docs. 36, 37). After discussing the available record, this recommendation assesses the Sheriff's Office Defendants' motion for summary judgment and then assesses Defendant Nurse

6

Betty Evans's motion for summary judgment. As discussed below, both sets of Defendants are entitled to judgment as a matter of law.

**(A)** **Available Record**

The record in this case is voluminous due, in significant part, to Plaintiff's aim of availing himself of prison medical services while possible. *See* (Doc. 41, p. 39). The relevant medical record, though, is limited, and it can be summarized as follows.

In a medical screening conducted upon his entry into the Twiggs County Jail in July 2020, Plaintiff was already noted to suffer, among other ailments, from "neck pain [radiating] down to [left] hand." (Doc. 41, p. 1). Some weeks later, on Friday, August 21, 2020, Plaintiff alleges that he was attacked by an inmate named Wilson. (Doc. 64, p. 9). Although Plaintiff's complaint in this action suggested that the attack occurred in Plaintiff's cell, other evidence now indicates that the attack may have occurred in a dorm common area. *See* (Doc. Doc. 64-5, p. 1).

In a subsequent prison grievance, Plaintiff alleged that due to the attack he suffered from "a bruise around my neck for 4 days," along with accompanying pain. (Doc. 64-4, p. 4). In that same grievance, Plaintiff described his efforts to seek medical attention from the Defendants:

> I … had a bruise around my neck for 4 days. I showed a few officers as well as Nurse Betty on Tues[day] when she saw me. Also on the same Friday as inmate Wilson attacked me, Nurse Betty called me out to be seen around 3 PM, I [explained] to her my pains, and she then stated she would get xrays and wait for [t]he doctors['] orders.

(Doc. 64-4, p. 4)

In the weeks after the attack, Plaintiff submitted numerous requests for medical services, many of which complained of radiating neck pain. (Doc. 41, pp, 41–60). Radiological imagining of Plaintiff's cervical spine obtained on August 25, 2020, showed "satisfactory" vertebral

alignment and "satisfactory" disc spacing but did reveal "moderate anterior interbody spurring" at the lower end of Plaintiff's cervical spine. (Doc. 41, p. 30). Overall, Plaintiff's cervical spine was characterized as "normal." (*Id.*).

During this period, the record indicates that Defendant Evans treated Plaintiff with a variety of medications, including Tylenol, Robaxin, and Neurontin. (Doc. 41, p. 25). Despite this treatment, Plaintiff continued to complain of "pain and uncomfort … in my neck, arms, and ear." (Doc. 41, p. 60). Plaintiff sometimes attributed this pain to the ineffectiveness of his medications, (Doc. 41, p. 47) ("These medications are not healing my neck and ear issue"), yet at other times the record indicates that Plaintiff declined to take pain medications due to kidney concerns. *See* (Doc. 41, p. 60) ("I cant keep taking medications that cause[] my kidneys to give me problems"). *Accord* (Doc. 41, pp. 10–15) ("Refusal of Medical Treatment").

The record indicates that Plaintiff treated with a non-party physician, Dr. James Graham, sometime in mid-to-late September 2021. *See* (Doc. 64-2, p. 25). *Accord* (Doc. 41, p. 20; Doc. 64-4, p. 6). Plaintiff complained, in prison grievances and medical requests, about the cursory nature of Dr. Graham's examination. (Doc. 41, p. 83). Plaintiff also made requests for referrals to "a n[e]urologist and orthopedic specialist," or "a real doctor," (Doc. 41, pp. 88, 92, 114, 128), along with requests to alter the type and dosage of his pain medication. *See* (Doc. 41, p. 99) ("can you please take away the naproxen and double up on the other pain/nerve medication?"). *Accord* (Doc. 41, p. 109). The following is a representative response given by Defendant Evans to Plaintiff's complaints of pain and requests for different medical treatment — in the response, Evans both encouraged Plaintiff to exercise patience with his analgesic regimen and attempted to temper Plaintiff's expectations of further care from a specialist:

> He is your medical doctor[] while you are incarcerated here. The doctor had address[ed] your neck and arm pain. In both arms. It's just not done to your liking.

8

> You never follow up with a doctor[] when you are out side. This is not the jail[']s fault, that's on you. [Y]our meds have been change[d] to help with the pain. You never [give] any meds enough time to work[] before you start to complain.

> (Doc. 41, p. 86)

The Sheriff's Office Defendants—Defendants Mitchum, Gary, and Faulk—were not directly involved in Plaintiff's medical care, and these Defendants have submitted declarations stating that based on their personal observations of Plaintiff's behavior during this period, they did not perceive Plaintiff to be in pain. For example, Defendant Gary testifies that "in the weeks following the [attack by inmate Wilson]," Gary saw Plaintiff "freely moving around the grounds, engaging in sports with other inmates, and otherwise failing to act as if he was pain." (Doc. 36-3, ¶ 13). *Accord* (Doc. 36-10, ¶ 4).

The last available evidence dates from February 2021, when Plaintiff had a cervical spine MRI examination at the Emanuel Medical Center. There, treating sources found signs of cervical-spine degeneration, specifically facet arthropathy, joint osteophytes, disc bulges at multiple vertebral sites, severe canal stenosis at the C6-C7 site, and neural foramina stenosis along the C4-C7 sites. (Doc. 64-1, pp. 1–2). Subsequent treatment records indicate that Plaintiff also suffered from associated pain and that treatment with gabapentin, muscle relaxants, and trigger point injections proved insufficient to alleviate Plaintiff's pain. (Doc. 64-1, p. 3).

**(B)    Sheriff's Office Defendants  (Doc. 36)**

The Sheriff's Office Defendants move for summary judgment on three grounds, and the record supports two of the Defendants' arguments. Although Plaintiff has demonstrated an objectively serious medical need, no reasonable jury could find that the Defendants were deliberately indifferent, and additionally, the Defendants are entitled to qualified immunity.

9

Accordingly, it is recommended that the Court grant the motion for summary judgment filed by Defendants Sheriff Mitchum, Lieutenant Gary, and Chief Deputy Faulk. (Doc. 36).

### i. Serious Medical Need

Plaintiff claims that Inmate Wilson's attack resulted in neck trauma, which in turn caused Plaintiff to suffer from pain. To support his argument, Plaintiff has submitted medical records from February 2021 showing foramina stenosis at the C3-C7 vertebral sites of Plaintiff's spine. *See* (Doc. 64-1, p. 1). The record also contains medical requests and jail grievances memorializing Plaintiff's complaints of neck pain in the weeks following the August 2020 attack. *See* (Doc. 41, pp, 41–60).

It is true that some other evidence, such as an affidavit from Defendant Gary, suggests that Plaintiff was not as injured as he claims by the assault. *See* (Doc. 36-3, ¶ 13) ("I saw nothing to suggest that Mr. Negrin was in severe pain … I saw him freely moving around the grounds, engaging in sports with other inmates, and otherwise failing to act as if he was in pain"). Yet a reasonable jury, if it chose to credit Plaintiff's evidence and narrative, could conclude that Inmate Wilson's attack caused Plaintiff to suffer from neck trauma or deterioration in an existing condition, which in turn caused Plaintiff to suffer from significant pain along the cervical spine. This is sufficient to show an objectively serious medical need for purposes of summary judgment. *Cf. Brennan v. Headley*, 807 F. App'x 927, 934 (11th Cir. 2020) (concluding that a prisoner's "degenerative herniated discs" amounted to an objectively serious medical need).

### ii. Deliberate Indifference and Qualified Immunity

The Sheriff's Office Defendants are nevertheless entitled to summary judgment because Plaintiff cannot show deliberate indifference and because the Defendants are entitled to qualified immunity.

To make out a claim of deliberate indifference to medical needs, a plaintiff must show "(1) a serious medical need; (2) defendants' deliberate indifference to that need; and (3) a causal link between the defendants' indifference and [the plaintiff's] resulting injury." *Foster v. Maloney*, 785 F. App'x 810, 815 (11th Cir. 2019). "Deliberate indifference," in turn, requires a showing of "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Id. Accord Nam Dang by and through Vina Dang v. Sheriff, Seminole Cnty, Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017).

Plaintiff cannot satisfy the deliberate indifference prong of this inquiry for two reasons. First, Plaintiff offers no evidence to suggest that the Defendants possessed subjective knowledge of a serious risk of harm. Specifically, the Defendants have submitted declarations testifying that they did not observe or perceive Plaintiff to be in significant pain, *see, e.g.*, (Doc. 36-6, ¶¶ 15, 16), and Plaintiff has failed to cite or submit countervailing evidence to show that the Defendants were subjectively culpable. *See Williams v. Limestone Cnty., Ala.*, 198 F. App'x 893, 898 (11th Cir. 2006) ("Deliberate indifference is a stringent standard of fault, requiring proof that the actor disregarded a known or obvious consequence of his action") (internal punctuation omitted). Second, the Defendants' response to Plaintiff's condition was reasonable and did not amount to "more than [mere] negligence." Because the Defendants knew that Plaintiff was receiving care from Defendant Evans and other medical sources at Southern Health Partners, the Defendants were entitled to "rely on medical judgments made by medical professionals responsible for prisoner care." *Id*. at 897.

Finally, even if Plaintiff could show that the Sheriff's Office Defendants were deliberately indifferent to Plaintiff's need for medical care, the Defendants would still be entitled to summary judgment on grounds of qualified immunity because they violated no clearly established right. To

-
-

make the required showing, Plaintiff must cite either: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Shuford v. Conway*, 666 F. App'x 811, 817 (11th Cir. 2016).

Plaintiff can cite no such authority, and no such authority is apparent. Rather, because the record makes clear that Plaintiff received extensive medical treatment, albeit not the treatment he desired, and because the Sheriff's Office Defendants were entitled to rely on the judgment of medical professionals, the Defendants violated no clearly established right. Hence, the Sheriff's Office Defendants are alternatively entitled to summary judgment on grounds of qualified immunity.

**(C)    Nurse Betty Evans**

Defendant Nurse Evans is also entitled to summary judgment both on the merits and on the basis of qualified immunity. Regarding the merits of Plaintiff's claims against Evans, the record shows that Evans provided regular care to Plaintiff in the form of dispensing medications and in the form of responding to Plaintiff's numerous medical services requests. As a general matter, when a prisoner or detainee has received medical care, courts hesitate to find a constitutional violation. *See Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989).

"[M]edical treatment violates the Constitution only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Nam Dang by and through Vina Dang v. Sheriff, Seminole Cnty, Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017). The care provided by Nurse Evans easily exceeds this threshold. The record shows that Plaintiff received x-rays quickly after inmate Williams's attack, and those x-rays revealed normal

results. Thereafter, Plaintiff received pain medication at regular intervals. Finally, when Plaintiff voiced concerns that the medications were not working or that Plaintiff was concerned about the potential effects upon his kidneys, the record shows that Defendant Evans and Dr. Graham, a non-party physician, made efforts to adjust Plaintiff's medication regimen. No reasonable jury could find, on these facts, that Defendant Evans was deliberately indifferent to Plaintiff's medical needs.

Moreover, Defendant Evans is alternatively entitled to qualified immunity because she violated no clearly established right. Plaintiff cites subsequent medical imaging from February 2021 showing cervical spine deterioration, and Plaintiff argues that surgical intervention was and remains necessary. There is nothing in the record to indicate that Defendant Evans, as a nurse, had the authority or competence to order a surgical procedure for Plaintiff. Moreover, Eleventh Circuit caselaw establishes that prisoners and detainees are not entitled to have the medical treatment of their choice. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference"). Plaintiff cites to no case holding, or abstract principle indicating, that he was entitled to surgical intervention as opposed to the mere management of his condition with analgesic medication, and no such authority is apparent. Accordingly, even if Defendant Evans had violated Plaintiff's Fourteenth Amendment right to a "minimal level" of medical care, *Hamm*, 774 F.2d at 1573, that right did not clearly establish Plaintiff's entitlement to surgical intervention. Hence, in the alternative, the Court should award Defendant Evans summary judgment on grounds of qualified immunity.

## CONCLUSION

For the reasons discussed herein, it is **RECOMMENDED** that the Defendants' pending motions for summary judgment (Docs. 36, 37) be **GRANTED** and that Plaintiff's motion for

reconsideration (Doc. 65) be **DENIED.** Additionally, it is **ORDERED** that Plaintiff's motion for a stay (Doc. 54), and Plaintiff's motion to compel discovery (Doc. 59), are **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the presiding District Judge **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Any objection is limited in length to **TWENTY (20) PAGES.** *See* M.D. Ga. L.R. 7.4. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 11th day of May, 2022.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge